[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Sterling R. Stokes ("Husband") and Defendant Melva Stokes ("Wife") intermarried on September 23, 1972 at Elton, Louisiana. He was born on August 4, 1952, and she on March 11, 1951. There are two children of the marriage: Consuela D. Stokes, born July 19, 1973, now in her junior year at the University of Tennessee; and Sterling Ross Stokes, III, born on June 16, 1977, now in his junior year in high school. Both children reside with the Wife in Knoxville, Tennessee. The Wife relocated to Knoxville in October, 1993, five months after this action was instituted.
The parties met and were married while attending the same college in Baton Rouge, Louisiana. The Husband received his college degree, and subsequently earned a masters degree in public administration. The Wife did not finish college, but in 1978 completed a home study course in interior design from International Correspondence Schools.
After graduation from college, Husband served as an officer in the United States Army, rising to the rank of CT Page 1391 Captain. He left the Army in 1984. Later that year he became employed by Pfizer, primarily in industrial relations and human resources, and served in that capacity for Pfizer at various locations, including Canaan, Connecticut. He is presently employed as Human Resources Manager by Minerals Technology, Inc. in Bethlehem, Pennsylvania, where he resides. His employment responsibilities and earning capacity have been steadily on the increase.
Throughout the years, the Wife has been employed full-time in various positions, and at times has conducted a part-time interior decorating business. She was able to obtain such employment at the numbers of locations to which the family relocated due to Husband's military, and later Pfizer, assignments. She is presently employed as a Human Resource Coordinator by the Pepsi-Cola Company in Knoxville, Tennessee.
The parties moved to Canaan, Connecticut in 1989 when the Husband was promoted to Human Resources Manager for the Pfizer plant there. They continuously maintained residence in Canaan until after this action was instituted. The marital home in Canaan was sold this past August.
Except for Husband's "Earnings Statement" for the monthly period ending January 31, 1995 (Plaintiff Exhibit 1), and an outdated and not very inclusive statement concerning his pension plan (Plaintiff Exhibit 2), the Court has not been furnished with any documentary evidence or valuation concerning earnings, assets or liabilities. The Court has relied upon the testimony and Financial Affidavits of the parties.
Husband's base salary for 1995 is $84,106.08, payable at the monthly rate of $7,008.84 on the last day of each month. Contributions to his 401(k) plan are deducted therefrom. These monthly deductions presently total $560.71, of which $350.44 represents a pre-tax contribution, reducing his monthly federal taxable wages to $6,658.40. On January 31, 1995, he received an additional $7,569.00 bonus/performance share payment. This increases his effective 1995 gross pay to $91,675.08. CT Page 1392
Husband has several employment benefit plans. These include the aforementioned 401(k) plan, an employer funded pension plan, stock options, and group insurance. His 401(k) plan has a value as of December 31, 1994 of $22,703.38, as well as a $9,156.50 balance owing on a loan of $10,000.00 which he took from the plan. His Earnings Statement indicates that he is repaying this loan by salary deduction of $199.23 per month. He testified that because of this outstanding loan, the plan is not subject to transfer nor can he borrow from it until the present loan is repaid.
According to Husband, the lump sum value of the pension plan accumulated during the marriage is approximately $14,000, which translates into pension payments of $665.48 per month commencing at his age 65 retirement. He is entitled to group life insurance in the face amount of four times his annual earnings, and is presently paying by salary deduction $69.92 per month therefor. The value of his stock options is too speculative and minimal to be herein relevant.
The Wife commenced her current employment on January 25, 1994. Her 1994 salary and bonus totalled $20,100.00. Her 1995 earnings may reasonably be assumed to be the same. She has medical and dental insurance coverage, and a pension plan that will vest after five years of employment.
The Wife is in possession of a 1993 Mitsubishi automobile leased by the Husband. He is in possession of a 1986 Nissan automobile, title to which is in both names.
Each party's Financial Affidavit shows considerable debt. Husband shows debts of approximately $73,000.00. Of these, $7,800.99 represents a debt to his employer in connection with the August 1994 sale of the Canaan marital residence, which was a loss transaction. An additional $25,000 represents loans for his daughter's college education, on which he is presently paying interest only. Additional loans will be needed for her college senior year. He plans to do the same for his son. The balance are credit card and similar debt, some of CT Page 1393 long standing.
The Wife's Financial Affidavit shows $27,700.00 of credit card and similar debt, some of recent origin. There are no duplications of debts represented on the parties' respective affidavits. He will need time to work out from the burden of his indebtedness, and she will need time to adjust to management of her financial resources.
The marriage has irretrievably broken down. The Court will assess no fault to either party. The parties have been living separate and apart at least since the institution of this action. The Husband has been voluntarily giving the Wife $1,000.00 per month for support, and has been making lease and insurance payments on her automobile amounting to $533.85 per month. In addition, he has been paying for the insurance on the rented condominium in which she resides, an expense which she will now undertake.
At the close of this trial, the parties entered into an agreement involving a substantial number of financial issues. This agreement, which the Court finds fair and equitable, will be incorporated by reference in the Court's orders below set forth. The parties have further agreed that the remaining financial issues to be decided by the Court concern those related to alimony for the Wife, the Husband's pension plan and group life insurance, and contribution to the Wife's attorney's fees.
In making the following findings and orders, the Court has carefully considered the pertinent statutory criteria and requirements, including those within the purview of General Statutes §§ 46b-81 and 46b-82. The Court has carefully reviewed the evidence in conjunction with the same, and has evaluated the credibility of the parties.
The Court makes the following findings and orders:
(In general:)
1. The Court has jurisdiction. CT Page 1394
2. The marriage has broken down irretrievably.
3. The marriage is dissolved.
(Pursuant to the stipulation and agreement of the parties, which the Court finds fair and equitable:)
4. Custody and Visitation: The parties shall have joint custody of their minor child, Sterling Ross Stokes, III. The primary residence of said child shall be with the Wife, and the Husband shall have rights of reasonable and flexible visitation.
5. Child Support. The Husband shall pay to the Wife child support for said minor child in the amount of $1,000 per month, which is in accordance with the Child Support Guidelines, until he attains eighteen (18) years of age or has completed high school education, whichever comes later. (Said child will attain age 18 on June 16, 1995, and is anticipated to complete high school in June, 1996.) The said $1,000 payment shall be due and payable on the 1st day of each month and shall be payable for the entire month during which the event of termination occurs.
6. Tax Deductions: The Husband shall be entitled to the tax exemptions and deductions for the children of the parties.
7. Medical Insurance: The Husband shall maintain medical insurance for the benefit of the parties' two children as long as they are eligible under the terms of his medical insurance as is currently available through his employer. If medical insurance is no longer available through the Husband's employer, the Wife shall obtain such insurance as is available through her employer and the parties shall split the cost of said medical insurance coverage on the basis of fifty percent (50%) paid by the Husband and fifty percent (50%) paid by the Wife.
The parties shall split all unreimbursed medical, dental, orthodontic, psychiatric and prescriptive expenses on the same basis: the Husband shall be CT Page 1395 responsible for fifty percent (50%) and the Wife for fifty percent (50%).
8. Motor Vehicles: The Husband shall continue the payments on the lease and insurance premiums for the 1993 Mitsubishi motor vehicle currently in the possession of the Wife, and the Wife is granted exclusive possession of said vehicle for the remainder of the lease and any conversion rights to said vehicle. The Wife shall be entitled to the lease deposit on the vehicle and shall be responsible for the expense of any excess mileage or damage to said vehicle at the end of the lease.
The Wife shall forthwith transfer to Husband her ownership interest, if any, to the 1986 Honda motor vehicle currently in his possession, so that he shall have full title to the same.
9. Debts: The Husband shall assume the debts listed on his Financial Affidavit and hold the Wife harmless thereon. The Wife shall assume the debts listed on her Financial Affidavit and hold the Husband harmless thereon.
10. Tax Return. The parties agree to cooperate with each other and file a joint 1994 income tax return. The parties shall split any refund 50-50.
(In addition:)
11. Lump Sum Alimony: The Wife is awarded lump sum alimony in the amount of $5,000.00, due and payable $2,500.00 on March 1, 1995 and $2,500.00 on March 1, 1996. This award shall not be modifiable for any reason.
12. Periodic Alimony: The Wife is awarded periodic alimony for a period of 14 years commencing March 1, 1995 at the rate of $1,700.00 per month, less, however, the amount of such monthly payments, if any, as shall be due and payable for or during said month for Husband's child support and leased vehicle obligations under the foregoing Paragraphs 5 and 8 of these orders. This award shall terminate upon the death of either party, or upon the Wife's remarriage or cohabitation with any person. CT Page 1396
13. Attorney's Fees: On or before March 1, 1995, the Husband shall pay the sum of $2,500.00 to the Wife for her attorney's fees. Said payment shall be made payable and transmitted directly to Wife's Attorney, John R. Logan, Esq., 9 Mason Street, Torrington, Connecticut 06790.
14. Life Insurance: The Husband shall maintain a policy or policies of life insurance in the face amount of $200,000.00, naming the Wife as the irrevocable primary beneficiary. Annually, on March 1 of each year, the Husband shall provide the Wife evidence that said life insurance is so in effect. Husband's life insurance obligation hereunder shall terminate upon termination of his foregoing periodic alimony obligation.
15. Pension Plan: The Wife shall receive one-half of the present value (estimated at $14,000 as aforesaid) of the Husband's pension plan through his present employment. An appropriate Qualified Domestic Relations Order ("QDRO") shall be prepared and submitted to the Court to effectuate this order. The Court shall retain jurisdiction respecting said QDRO to provide proper distribution of said plan as herein set forth.
DAVID L. FINEBERG, J.